Arrow Upholstery Co., Inc., et al. v. United States

No. 7589.—Invoices dated Lentate-Birago, Italy, July 9, 1938, etc.
Certified July 9, 1938, etc.
Entered at New York, N. Y., July 25, 1938, etc.
Entry No. 1904, etc.

(Decided May 7, 1948)

Siegel, Mandell & Davidson (Sidney Mandell of counsel) for the plaintiffs.
Paul P. Rao, Assistant Attorney General (Daniel I. Auster, special attorney), for the defendant.

Mollison, Judge: These appeals for reappraisement, enumerated in the attached schedule A, were taken from values found by the United States appraiser on certain knocked-down furniture frames exported from Italy during the period between July 13, 1938, and April 30, 1940.

The initial case, reappraisement 133765–A, is a so-called test case, the merchandise involved in the other five cases having been entered at values higher than the claimed values because of advances made by the appraiser in the test case, according to the certificate of the importer filed in each case in accordance with the provisions of section 503 (b) of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1503 (b)). The merchandise involved in the initial case, the test case, was entered at the invoice prices, less the charge for inland freight from the place of manufacture, Lentate-Birago, to the seaport, Genoa. The appraiser's action is stated on the invoice as follows:

Appraised at invoice unit values plus 8⅓% less inland freight Lentate-Genoa (packing included).

It appears that the merchandise was made on special orders according to the importer's designs by a furniture frame manufacturer named Silvio Sala, whose factory was located at Lentate-Birago, which

is near Milan. Counsel have agreed that there was no foreign value, export value, or United States value, as those values are defined in section 402 of the Tariff Act of 1930 (19 U. S. C. 1940 ed. § 1402), which stipulation has the effect of requiring appraisement of the merchandise on the basis of cost of production as defined in subsection (f) of said section 402. Cost of production is defined in the said subsection as follows:

(f) COST OF PRODUCTION.—For the purpose of this title the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

At the trial of the issue, counsel for the plaintiff offered in evidence an affidavit in the Italian language, together with a translation thereof, of Silvio Sala, sworn to before the American vice-consul at Milan, Italy. Counsel for the defendant offered no objection to the admissibility of the said document, but in the brief filed on behalf of the defendant raised certain questions as to the weight which should be accorded thereto. The affidavit and the cost schedule included therewith were received in evidence and marked collective exhibit 1.

In his affidavit the affiant states that he is the sole proprietor of the firm which manufactured and exported the frames here in question; that such firm has been in the business of manufacturing furniture frames for over 4 years; that he has personal charge of the technical and commercial ends of the firm, and is personally familiar with the commercial transactions concluded thereby; that inasmuch as he is in charge in the matter of arriving at selling prices, he is familiar with all the elements of cost which enter into the selling price, including the cost of production, and that he includes a schedule of the furniture frames involved in the consular invoice of July 1938 (the test case herein), together with all the elements of the cost of production thereof as taken from the books of the firm.

The schedule is divided into columns which show for each item (identified by description and number) the following information according to the captions: "Price of Sale," "Cost of Mat'l.," "Cost of Prod.," "Gen. Exp.," "Packing & Transportation fob Genoa," "Profit," and, again, "Total Cost of Sale."

No other evidence was offered by either side. Counsel for the Government made the following statement:

> The importer, having rested, and in view of the fact that I have read this translation, I am thoroughly convinced that as a matter of law the importer has failed to meet his burden of proof as to the value of the cost of production under the various subdivisions of Section 402 (f) of the Tariff Act of 1930 and the law interpretive of that section.
>
> Therefore, although the Government has in its possession a report in connection with this matter, I do not intend to offer it and will submit my case on this statement. * * * [R. p. 6.]

In the brief filed by counsel for the defendant it is pointed out that—

> * * * There is no explanation with respect to the column in the schedule marked in pencil "Cost of Prod.", nor of the column headed "Gen. Exp." Whether or not these form parts of subdivision (1) and (2) of Section 402 (f) is not clearly or specifically stated. It is necessary for the court to assume what these two items, in fact, may be. This should not, and cannot be the function of the court, for the courts may not properly supply from imagination the elements in which the proofs are lacking. *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, 167. * * *

I do not regard this criticism as valid nor the citation of the *Malhame* case as apt. It seems to me that it is a fair inference from the manner in which the entire document is drawn that the total of the two columns headed "Cost of Mat'l." and "Cost of Prod." obviously represents the total called for by subdivision (1) of the cost-of-production formula. In making such an inference the court is not supplying "from imagination the elements in which the proofs are lacking"; the elements of proof are there as evidentiary facts and need only wholly justifiable inference to transform them into ultimate facts. The observation of the Court of Customs and Patent Appeals in the *Malhame* case was directed to those situations in which there is an absolute dearth of evidentiary facts.

So with the column headed "Gen. Exp.," which I note in each case exceeds the statutory minimum of 10 per centum of the totals of the columns headed "Cost of Mat'l." and "Cost of Prod."

Counsel for the Government points out that the profit indicated by the schedule is the profit made by the exporter of the instant frames in connection with these identical frames. It is urged that this does not meet the statutory requirement of—

> An addition for profit * * * equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of

manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

In support of this contention there are cited several cases decided by the Court of Customs and Patent Appeals, one of which was *United States* v. *Henry Maier*, 18 C. C. P. A. 409, T. D. 44679, wherein the court said:

It will be observed that said subsection 4 [of the cost-of-production statute found in the 1922 tariff act which is identical in language with the successor provision in the existing tariff act] provides for an addition for profit of an amount equal to the profit which ordinarily is added by manufacturers in the same country of the same class or kind of product. It does not provide that an addition for profit may be made equal to the profit of the particular manufacturer who made the goods in question. * * *

That observation was made in connection with a record which showed that the court below had failed to give consideration to evidence as to the profit usually added by other manufacturers in the same country of merchandise of the same general character. The court below (*Henry Maier* v. *United States*, Reap. Circ. 1666) had said:

It seems to us that the general expenses and usual profit of each individual concern is the criterion.

The decision of the appellate court was that the case be remanded for a rehearing, and it appears that upon such rehearing the lower court considered the evidence with respect to profits by others than the manufacturer of the goods in question, and concluded that such evidence was insufficient as a basis for addition for profit in the case involved. (*United States* v. *Henry Maier*, 60 Treas. Dec. 577, T. D. 45179.) After reaching such conclusion, the writer of the opinion of the majority of the lower court expressed certain views indicating that, in the majority's opinion, insofar as the profit subdivision of the cost-of-production formula based the ultimate result upon the profit or profits of manufacturers other than the manufacturer of the goods involved, it was unworkable.

Upon appeal, the Court of Customs and Patent Appeals in *United States* v. *Henry Maier*, 21 C. C. P. A. 41, T. D. 46378, expressed its disagreement with the view that the provision referred to rendered the paragraph unworkable, and made the following statement, which I consider to express clearly and succinctly the law on the subject:

It is our view that there is no occasion for construing said paragraph 4 by eliminating any portion of it as unworkable, as indicated by the lower court, but that it should be reasonably construed to effectuate the apparent intent of Congress, viz, that the profits of the manufacturer of imported merchandise shall not be the sole criterion in the application of the statute, but where there is other evidence in the record, or available to the parties with respect to profits ordinarily made by other manufacturers of merchandise of the same general character as that imported, in the country of exportation, such evidence must be considered by the appraising officers and by the court upon reappraisement, and the amount of profit

should be determined according to the weight of all the evidence bearing upon the subject.

In the case at bar there is no evidence as to the item of profit save the evidence of the profit of the manufacturer of the merchandise here involved, which, it appears, exceeded the statutory minimum as to each item of furniture frames covered by the schedule in collective exhibit 1. I see no reason why the plaintiffs should be required to make an express disclaimer that they had any evidence with respect to the profits ordinarily made by other manufacturers of merchandise of the same general character as that here involved, for I do not believe that the plaintiffs can be reasonably expected to prove facts which by their very nature are beyond their knowledge or control, which is ordinarily the case as to profits made by other manufacturers. The facts of business and commercial life are proper subjects for judicial notice, and I take judicial notice of the fact that except under extraordinary circumstances evidence as to the profit ordinarily added by other manufacturers would not be available either to the importer, who, as plaintiff, has the burden of proof before this court, or to the manufacturer or exporter from whom the importer bought the particular merchandise and who is his natural source of information.

Information as to profits and costs of production is ordinarily a closely guarded business secret. Even if the manufacturer or exporter or importer did come into possession of information bearing upon the subject, it would hardly be in the form of evidence of the type and quality admissible in a court of law such as the United States Customs Court.

Nor could the production of such evidence be compelled by the plaintiffs. The sources of evidence of that nature are almost invariably, as in this case, located abroad, under circumstances where the process of this court to compel its production cannot be enforced.

It was probably with this in mind that the appellate court in the second *Maier* case, *supra*, said:

* * * In other words, as we construe said paragraph 4, it is not enough to establish what the ordinary profit of the manufacturer of the imported merchandise was, if merchandise of the same general character was produced and sold by others in the country of exportation, *and the profit made thereon is reasonably ascertainable.* * * * [Italics added.]

Section 402 (f) sets up standards for the elements of cost of production, and the costs, expenses, and profits of the particular manufacturer are some substantial evidence of each of those elements. *Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114, and *United States* v. *Henry Maier*, 21 C. C. P. A. (Customs) 41, T. D. 46378.

In view of the foregoing, I hold that the evidence of the elements of cost of production represented by collective exhibit 1, together with

the record as made, established a *prima facie* case in favor of the plaintiffs as to the items of frames covered by the said collective exhibit 1 and identified therein, which *prima facie* case shifted the burden of going forward with the evidence to the defendant, and in the absence of rebutting evidence the plaintiffs must prevail as to such items.

As has been said, the schedule in collective exhibit 1 identifies the items, the elements of the cost of production of which are therein shown, by numbers which correspond to item numbers found on the invoice involved in the test case, reappraisement No. 133765–A/02398. The total of such elements of cost of production, less the nondutiable item of inland freight (which was included in said costs), equals the entered values of such items. As to reappraisement 133765–A/02398, therefore, I find that cost of production as defined in section 402 (f) of the Tariff Act of 1930 is the proper basis for the determination of the value of the merchandise involved, and that such value in the case of each of the items of frames covered by that reappraisement appeal is the entered value.

None of the item numbers contained in the schedule in collective exhibit 1 appears on the invoices covered by reappraisements No. 134865–A, 135529–A, 135820–A, and 137028–A. I find one item, No. 030, covered by reappraisement No. 136838–A, which is also included in the schedule in collective exhibit 1. However, the date of the invoice in reappraisement 136838–A is nearly 2 years after the date of the invoice in the test case, to which collective exhibit 1 specifically applies, and there is nothing to show that the same elements of cost of production obtained on the later date. I therefore find that as to all cases here involved, other than reappraisement 133765–A, the plaintiffs have failed to meet their burden of proof. As to such cases I find that cost of production is the proper basis for the determination of the value of the frames involved, and there being nothing in the record to overcome the presumption of correctness attaching to the appraiser's valuation of the merchandise, I find that such value is the appraised value in each case.

Judgment will issue accordingly.